UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CRMSUITE CORPORATION, a Florida
corporation

      Plaintiff,                                CASE No. 8:20-cv-762

vs.

GENERAL MOTORS COMPANY, a Delaware
corporation; GENERAL MOTORS LLC, a
Delaware limited liability company; AQUENT,
LLC, a Delaware limited liability company; and
AQUENT, INC., a Massachusetts corporation,

      Defendants.

_____/

**DEFENDANTS GENERAL MOTORS COMPANY AND GENERAL MOTORS
LLC'S MOTION TO DISMISS AMENDED COMPLAINT
AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants General Motors Company and General Motors LLC (collectively, "GM" or the "GM Defendants"), file this Motion to Dismiss the Amended Complaint filed by Plaintiff, CRMSuite Corporation ("Plaintiff"), for failing to state a claim for relief, and respectfully request this Court enter an order dismissing Counts I – IV with prejudice.

    **I.    INTRODUCTION AND BACKGROUND**

Plaintiff is a disgruntled customer relationship management ("CRM") software business that seeks to use litigation and this forum to force GM to utilize Plaintiff's services. Plaintiff is neither a GM-approved CRM vendor, nor does it have a contract with GM for the use of Plaintiff's CRM software. Plaintiff provides CRM services to some GM

dealers through AutoBase, a third-party CRM software product owned and hosted by Dominion Dealer Services ("Dominion"). (Doc. No. 1-1 (Am. Compl. or "FAC"), ¶ 23).[1] Unlike Plaintiff, Dominion is an approved GM vendor, integrated with GM systems. (*Id*. at ¶ 24). However, in or around February 2020, Plaintiff agreed to end its relationship with Dominion. (*Id*. at ¶ 28). Additionally, Dominion notified GM that it would cease offering AutoBase on March 31, 2020, leaving Plaintiff without an approved medium to provide CRM services to GM dealers. (*Id*. at ¶ 35).

Plaintiff claims that it undertook the process to integrate its next generation CRM software named "Vision" into the GM system. (*Id*. at ¶ 25). Plaintiff alleges that before that integration was complete, GM stopped communicating with Plaintiff. (*Id*. at ¶ 30). Plaintiff also makes baseless and unsupported allegations that the GM Defendants threatened punitive measures to GM dealers if the dealers did not terminate their relationship with Plaintiff. (Doc. 1-1, FAC, ¶¶ 31-32). Evidence of any such threatening communications to any GM dealer is conspicuously absent from the Amended Complaint.

Plaintiff is clearly not happy with GM's business decision not to integrate Plaintiff's CRM software, Vision. Plaintiff has twisted this outcome into four misconceived claims to improperly seek legal redress against the GM Defendants while artfully attempting to hide the fact that it suffered no actual injury because of GM's business decision not to use Plaintiff's software.[2]

---

[1] The statement of facts is drawn from the Amended Complaint and, given this procedural posture, assumes facts alleged by Plaintiff to be true.

[2] Plaintiff's claims are so weak and have such little factual basis that Plaintiff resorts to resurrecting former missteps of GM—which are utterly irrelevant to this matter, and for which GM has already atoned—just to portray GM as a bad actor. This is such a transparent attempt at character assassination that GM trusts that a motion to strike these scandalous and impertinent matters is unnecessary.

The crux of the Amended Complaint is the overarching allegation that the GM Defendants, together with Aquent, Inc. and Aquent, LLC (collectively, "Aquent" or the "Aquent Defendants"), have engaged in unfair competition or trade practices with anticompetitive effects, have tortiously interfered with Plaintiff's business relationships and contracts with automobile dealers, and have failed to conduct business in good faith. (*Id.* at ¶¶ 16; 43). However, the Amended Complaint does not plead any actual damages suffered by Plaintiff, but only speculates that the alleged "illegal, unfair, tortious" conduct "will reduce the number of CRM suppliers artificially and result in higher prices to auto dealers." (*Id.* at ¶ 22). Plaintiff offers no factual support for its claims.

The Amended Complaint is flawed and misconceived in many ways. Count I, Plaintiff's unfair and deceptive act claim, fails because Plaintiff does not plead factual allegations of causation and actual damages, which are two of the three required elements of the legal claim. Count II, Plaintiff's tortious interference claim, does not include any factual allegations of lost business or other damage resulting from any breach or termination of a business or contractual relationship that Plaintiff had with a third party. Count III, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is not even a recognized cause of action under Florida law where, as here, Plaintiff had no contract with GM. Count IV, Plaintiff's antitrust claim, similarly does not allege the most basic elements required to maintain a claim under the Florida Antitrust Act and under federal pleading standards, such as an antitrust injury.

Plaintiff's Amended Complaint is nothing more than a formulaic recitation of legal elements, misconceptions of settled law, and completely irrelevant allegations of prior

conduct. Fundamentally, Plaintiff's claims lack the factual support to nudge them over the line from conceivable to plausible as to prevent dismissal. The entire Amended Complaint should be dismissed **with prejudice**.

## II. PROCEDURAL BACKGROUND

Plaintiff commenced this action on March 3, 2020. Plaintiff filed an Amended Complaint on March 4, 2020. The case was timely removed to federal court on April 1, 2020. (Doc. No. 1).

## III. LEGAL STANDARD FOR MOTION TO DISMISS

"A pleading that states a claim for relief must contain...a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim upon which relief may be granted, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Cross v. Point & Pay, LLC*, 274 F. Supp. 3d 1289, 1292 (M.D. Fla. 2017). When reviewing a motion to dismiss, a court must accept all factual allegations contained in the complaint as true and view the facts in a light most favorable to the plaintiff. However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Legal conclusions may "provide the framework of a complaint", but "they must be supported by factual allegations." *Id.* Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Additionally, the

4

factual allegations must demonstrate that that the plaintiff is entitled to relief, not just show a "mere possibility of misconduct." *Ashcroft*, 556 U.S. at 679.

## IV. PLAINTIFF'S CLAIMS MUST BE DISMISSED WITH PREJUDICE.

### A. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF FDUTPA.

Count I of the Amended Complaint fails to state a claim under the Florida Unfair and Deceptive Trade Practices Act ("FDUTPA") as it does not plead factual allegations to show that the GM Defendants'[3] alleged conduct caused actual damages to Plaintiff. Plaintiff's failure to factually plead required elements for a FDUTPA claim compels dismissal. (Doc. 1-1, FAC, ¶¶ 36-40).

FDUTPA declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices" committed "in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). A FDUTPA claim has three elements: (1) a deceptive, unconscionable or unfair act or practice; (2) causation; and (3) actual damages. *Dolphin LLC v. WCI Cmtys., Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013). To maintain a claim for damages under FDUTPA, a plaintiff must plead all three legal elements supported by factual allegations, and not mere legal conclusions. *Gibson v. Resort at Paradise Lakes, LLC*, No: 8:16-cv-791-T-36AAS, 2017 WL 3421532, at *3 (M.D. Fla. Aug. 9, 2017).

---

[3] As to all counts in the Amended Complaint, Plaintiff's indistinguishable allegations against both General Motors Company and General Motors LLC fail to satisfy Fed. R. Civ. P. 8(a)'s requirement to provide a "short and plain statement of the claim showing that the pleader is entitled to relief" against either – or both – General Motors entities. Plaintiff's conclusory allegation that "General Motors and GM LLC blur the lines between the two entities, if such lines exist, by consistently referring to 'General Motors' as the entity" (FAC, ¶ 3) is wholly unsupported by any facts.

5

It is well established that actual damages are a required element of a FDUTPA claim which must be specifically pled, and do not include consequential and special damages or future lost profits. *E.g.*, *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1323 (M.D. Fla. 2016) (citing *Hetrick v. Ideal Image Dev. Corp.*, 372 F. App'x 985, 991 (11th Cir. 2010) (per curiam)). Failure to plead actual damages when asserting a FDUTPA claim is a ground for dismissal. *Bishop v. VIP Transp. Group, LLC*, No: 6:15-cv-2118-Orl-22KRS, 2016 WL 1253734, at *3-4 (M.D. Fla. Mar. 15, 2016) *adopted by* No. 6:15-cv-2118-Orl-22KRS, 2016 WL 1244725 (M.D. Fla. Mar. 30, 2016)); *see also Bilotta v. Citizens Info. Assocs., LLC*, No. 8-13-cv-2811-T-30TGW, 2013 WL 12155486, at *3 (M.D. Fla. Dec. 12, 2013) (dismissing FDUTPA claim where no supporting facts sustained plaintiff's allegation of actual damages).

Here, Plaintiff fails to plead any factual allegations of causation and actual damages, two of the three required elements for a properly asserted FDUTPA claim. *See Dolphin*, 715 F.3d at 1250. Instead of expressly pleading causation and actual damages, Plaintiff merely asserts a bare, conclusory allegation that "[a]s a result of Defendants' unfair, deceptive and unconscionable actions, Plaintiff has been injured." (Doc. 1-1, FAC, ¶ 40). Plaintiff does not provide any factual allegations to describe how the alleged acts of Defendants have allegedly caused injury to Plaintiff and what actual damages Plaintiff has suffered as a result of those acts—which are tantamount to and consistent with GM's business decision simply to use a different CRM provider. Despite failing to plead the required elements of a FDUTPA claim, Plaintiff's FDUTPA Count requests punitive

damages, which are not allowed under the statute. Fla. Stat. § 501.211 (omitting punitive damages as relief afforded under FDUTPA).

Plaintiff's FDUTPA claim is defective as pled, and Plaintiff has failed to state a claim for relief under FDUTPA that is plausible on its face. Count I must therefore be dismissed with prejudice.

### B.   THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE.

Count II of the Amended Complaint fails to state a claim for tortious interference as it does not plead factual allegations to show intentional and unjustified interference with Plaintiff's business relationships by the GM Defendants and any resulting damage to Plaintiff.

To prevail on a claim of tortious interference with a business relationship under Florida law, a plaintiff must establish four elements: (1) the existence of a business relationship between plaintiff and a third person, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform; and (4) damage to the plaintiff as a result of the breach of the relationship or from the third person's failure to perform. *T. Harris Young & Assocs., Inc. v. Marquette Electronics, Inc.,* 931 F.2d 816, 825-26 (11th Cir. 1991), *cert. denied,* 502 U.S. 1013 (1991) (quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)). Tortious interference with a contractual relationship is essentially the same cause of action; the only difference is that it additionally requires the existence of an enforceable

contract. *Advantor Sys. Corp. v. DRS Tech. Servs., Inc.*, 678 F. App'x 839, 847 n.3 (11th Cir. 2017) (citing *Smith v. Ocean State Bank,* 335 So. 2d 641, 642 (Fla. 1st DCA 1976)).

  Here, Plaintiff fails to offer any factual allegations to support the required elements for tortious interference. Plaintiff's perfunctory pleading of this claim is nothing more than labels and conclusions regurgitating the legal elements. Plaintiff does not provide any facts to identify any specific lost business. Plaintiff merely offers the conclusory plea that "Plaintiff has been damaged as a result of aforementioned acts of Defendants." (Doc. 1-1, FAC, ¶ 46). The only express reference to any Plaintiff's business or contractual relationship is its contract with Dominion which, as conceded, Plaintiff agreed to end "on an amicable basis." (*Id*. at ¶ 28). Plainly, Defendants had nothing to do with the cancellation of Plaintiff's contract with Dominion.

  Plaintiff fails to factually identify any other specific business or contractual relationships that Defendants knew of and which were, in fact, breached or terminated due to Defendants' alleged conduct. Plaintiff acknowledges GM's existing contractual relationships with GM dealers. (*Id*. at ¶¶ 32-33). The Amended Complaint also makes clear that GM has an interest in any contracts or business relationships between Plaintiff and GM dealers as the nature of CRM software, like the one provided by Plaintiff, facilitates rights and obligations between GM and GM dealers. Given such contemporaneously existing relationships, Plaintiff fails to factually explain why GM would not justifiably provide direction to GM dealers regarding the dealers' options for CRM software providers. Plaintiff's self-serving gloss over GM's existing business

relationships is just as transparent as its formulaic recitation of the "intentional and unjustified interference" legal element with no factual support.

Plaintiff's tortious interference claim is defective, and Plaintiff has failed to state a claim for relief for tortious interference that is plausible on its face. Count II must therefore be dismissed with prejudice.

### C. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING.

Count III, which alleges a breach of the common law implied covenant of good faith and fair dealing against GM only, must be dismissed with prejudice because **GM is not alleged to have—and does not have—a contract with Plaintiff**. Florida law does not recognize a cause of action based on breach of this implied covenant where there is no enforceable contract between the parties.

Although Florida contract law generally recognizes an implied covenant of good faith and fair dealing in every contract, it is well-settled that a cause of action for good faith and fair dealing does not exist in Florida apart from an express and enforceable agreement. *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 547-48 (Fla. 2012); *Hosp. Corp. of Am. v. Fla. Med. Ctr., Inc.,* 710 So. 2d 573, 575 (Fla. 4th DCA 1998); *see also Aldora Aluminum & Glass Prod., Inc. v. Poma Glass & Specialty Windows, Inc.,* 683 F. App'x 764, 769-70 (11th Cir. 2017) ("Florida law does not recognize a claim for the breach of the implied covenant of good faith and fair dealing absent the existence of a valid contract. Instead the duty only "attaches to the performance of a specific contractual obligation." ); *see also  Ins. Concepts & Design, Inc. v. Healthplan Servs.,*

*Inc.,* 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001) (an implied covenant claim can be maintained only where breach of contract is also alleged). A duty of good faith must "relate to the performance of an express term of the contract and is not an abstract and independent term of a contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." *Id*. (quoting *Hosp. Corp. of Am.*, 710 So. 2d at 575).

Here, Plaintiff does not allege the existence of a contract with GM. (Doc. 1-1, FAC ¶¶ 47-61). Plaintiff only pleads that "Plaintiff and Defendant GM had a business relationship." (*Id.* at ¶ 49). Nonetheless, Plaintiff takes the leap to contend "Once [GM] undertook the process of testing and integrating Vision directly with Plaintiff . . . [GM] was subject to a contractual obligation to complete its promise to fairly integrate the Vision Product for use by [GM] dealers." (*Id*. at ¶ 57). However, the factual basis of the alleged "contractual obligation" or the alleged "promise" to integrate the Vision product is conspicuously absent from the Amended Complaint.

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing cannot survive because no such cause of action exists where, as here, Plaintiff had no contract with GM. Count III must therefore be dismissed with prejudice as a matter of law.

### D. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR VIOLATION OF THE FLORIDA ANTITRUST ACT.

The Amended Complaint fails to state an antitrust claim in Count IV because Plaintiff fails to allege even the basic elements necessary to maintain a claim under the Florida Antitrust Act and under federal pleading standards. Plaintiff's four-paragraph

antitrust claim evinces a lack of understanding or familiarity with basic pleading standards, as well as the complex antitrust concepts it attempts to allege.  The Amended Complaint simply lists antitrust labels but does nothing to show that any of those types of anticompetitive conduct are present, much less plausible, in this case.

The Florida Antitrust Act of 1980 § 542.18 and § 542.19 are identical to § 1 and § 2 of the federal Sherman Antitrust Act, respectively.[4]  Florida courts look to federal cases to analyze the sufficiency of Florida antitrust complaints.[5]  *MYD Marine Distrib., Inc. v. Int'l Paint Ltd.*, 76 So. 3d 42, 47 (Fla. 4th DCA 2011).  Antitrust law has developed robust pleading standards to ensure that claims are factually and plausibly pleaded to redress antitrust injury.  *See*, *e.g.*, *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 12740 (M.D. Fla. 2009), *aff'd*, 451 F. App'x 862 (11th Cir. 2012); *see also Quality Auto Painting Center of Roselle, Inc. v. State Farm*, 917 F.3d 1249, 1262 (11th Cir. 2019) (en banc) (holding that "[c]onclusory allegations of agreement or conspiracy are insufficient" and requiring a plaintiff asserting an antitrust claim to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"); *Twombly*, 550 U.S. at 570 (requiring enough facts to "nudge [a claim] across the line from conceivable to plausible").

---

[4] The principal difference between the Florida Antitrust Act and the Sherman Act is that the Florida Act does not require that interstate commerce be involved. *E.g.*, *St. Petersburg Yacht Charters, Inc. v. Morgan Yacht, Inc.*, 457 So. 2d 1028, 1032-33 (Fla. 2d DCA 1984).

[5] Indeed, Florida courts have used the *Twombly* plausibility standard in determining whether an agreement in violation of the Florida Antitrust Act can be *reasonably* inferred from the alleged facts. *Id.*  Hence, the fact that Plaintiff filed its complaint in state court and it was removed to federal court does not materially change either the applicable standard or the obvious pleading defects of Plaintiff's antitrust claim.

The Florida Antitrust Act provides: "Every contract, combination, or conspiracy in restraint of trade or commerce in this state is unlawful." Fla. Stat. § 542.18.[6] As some agreements may be procompetitive or benign, only agreements that *unreasonably* restrain trade are prohibited. *E.g., Arizona v. Maricopa Cty. Med. Soc.*, 457 U.S. 332, 343 (1982). Even then, "Congress did not intend the antitrust laws to provide a remedy in damages for all injuries that might conceivably be traced to an antitrust violation." *Pierson,* 619 F. Supp. 2d at 1275 (quoting *Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438, 1448 (11th Cir. 1991) (internal quotations omitted).

Here, among its many fatal flaws, the Amended Complaint alleges detriments to Plaintiff, but it does not allege "antitrust injury." It is axiomatic that the Sherman Act was enacted for "the protection of competition, not competitors." *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962). Yet, Plaintiff's claim is plainly anchored in the idea that *Plaintiff's* alleged injury establishes harm to competition. Plaintiff pleads that *"*Defendants' "actions seek to eliminate *a competitor* [Plaintiff] from competition" and that "Defendants' actions have cause willing customers to be unable to use *Plaintiff's product*" with the result that "*Plaintiff has been damaged*." (emphasis added). (*See* Doc. 1-1, FAC, ¶¶ 64-66). Antitrust law recognizes the fallacy in this position, and therefore does not recognize one market participant's injury as synonymous with injury to competition. *E.g.*, *Oksanen v. Page Memorial Hosp.*, 945 F.2d 696, 702 (4th Cir. 1991) (citing *Jefferson Parish Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 31 (1984)) ("For example,

---

[6] Plaintiff also references Fla Stat. § 542.19, which prohibits "any person to monopolize, attempt to monopolize, or combine or conspire to monopolize," but makes no factual allegation whatsoever that even could be construed to describe any "monopolization."

the fact that a hospital's decision caused a disappointed physician to practice medicine elsewhere does not of itself constitute an antitrust injury.")

Even assuming, *arguendo*, that Plaintiff could plead a cognizable antitrust injury, the Amended Complaint lacks numerous critical allegations to support an antitrust claim, even as basic as the existence of any anticompetitive agreement. Plaintiff's allegations are precisely the type of pleading that does not pass muster under *Twombly* as Plaintiff's antitrust allegations are nothing more than labels, conclusions, and formulaic recitations of legal elements—none of which can withstand dismissal. 550 U.S. at 555. This purported "antitrust" cause of action is so misconceived that Defendants should not be forced to compensate for Plaintiff's shortcomings by pointing out the myriad mistakes in such a deficient pleading.

Plaintiff's antitrust claim is defective as pled, and Plaintiff has failed to state a claim for relief for antitrust violation that is plausible on its face. Count IV must therefore be dismissed with prejudice. In addition to dismissing Count IV, this Court should award attorneys' fees to the GM Defendants, as prevailing parties, given Plaintiff's misconceived and frivolous antitrust claim and the complete absence of a justiciable issue of law or fact raised by Plaintiff's claim. *See* Fla. Stat. § 542.22(1).

### E.   DISMISSAL WITH PREJUDICE IS PROPER.

Plaintiff's claims are so seriously misconceived and defective as a matter of law that it is proper and appropriate for this Court to dismiss its claims with prejudice. Plaintiff has already amended its pleading once. A district court should grant a plaintiff one opportunity to amend their claims before dismissing them only if it appears a more

13

carefully drafted complaint might state a claim upon which relief can be granted. *See Silva v. Bieluch*, 351 F.3d 1045, 1048-49 (11th Cir. 2003) (citations omitted). Dismissal with prejudice may still be appropriate, however, if granting leave to amend would be futile." *Hilderbrandt v. Butts*, 550 F. App'x 697, 699 (11th Cir. 2013) (citing *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007)). "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant." *Id.* (quoting *Cockrell*, 510 F.3d at 1310).

Here, Plaintiff's fundamental grievance is that it did not get GM's business, and the core relief sought by Plaintiff is, in essence, profits as if it had been awarded GM's business. This case simply fits none of these claims, and Plaintiff is not entitled to any such relief. Thus, permitting Plaintiff a third attempt at artful pleading is futile, and the Amended Complaint should be dismissed with prejudice.

## V.   CONCLUSION

For the foregoing reasons, the Amended Complaint, even if viewed in a light most favorable to Plaintiff, is factually, legally and conceptually deficient as it fails to allege enough facts upon which relief may be granted for the four asserted claims. Dismissal with prejudice pursuant to Rule 12(b)(6) and attorneys' fees pursuant to Fla. Stat. § 542.22(1) are therefore compelled.

|  |  |
|---|---|
| Dated April 8, 2020. | **BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC** |

/s/ *Marisa R. Dorough*
Hal K. Litchford (Lead Trial Counsel)
Florida Bar No. 272485
*hlitchford@bakerdonelson.com*
Marisa Rosen Dorough
Florida Bar No.: 73152
*mdorough@bakerdonelson.com*
200 South Orange Avenue
Post Office Bo 1549
Orlando, FL 32802-1549
Tel: (407) 422-6600
Fax: (407) 841-0325

*Counsel for General Motors Company and General Motors LLC*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 8, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a Notice of Electronic Filing to the following:

John E. Johnson, Esq.
JOHNSON, CASSIDY, NEWLON & DECORT. P.A.
2802 N. Howard Avenue
Tampa, FL 33607
(*Counsel for Plaintiff CRMSuite Corporation*)

Michael L. Forte, Esq.
RUMBERGER, KIRK & CALDWELL, P.A.
100 North Tampa Street, Suite 2000
Tampa, FL 33602
(*Counsel for Defendants Aquent, Inc. and Aquent, LLC*)

Dawn Mertineit, Esq.
Michael A. Kippins, Esq.
SEYFARTH SHAW LLP
Seaport East, Suite 300
Two Seaport Lane
Boston, MA 0221
(*Counsel for Defendants Aquent, Inc. and Aquent, LLC*)

              /s/ *Marisa R. Dorough*
                 Marisa Rosen Dorough